## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | **Case No. 1:21-cr-00238 (TFH)** |
| | : | |
| **JOSHUA KAHLE BUSTLE, and** | : | |
| **JESSICA LOUISE BUSTLE,** | : | |
| | : | |
| **Defendants.** | : | |

## UNITED STATES' MOTION TO CONTINUE AND
## TO EXCLUDE TIME UNDER THE SPEEDY TRIAL ACT

The United States of America hereby moves this Court for a 60-day continuance of the above-captioned proceeding, and further to exclude the time within which the trial must commence under the Speedy Trial Act, 18 U.S.C. § 3161 *et seq*., on the basis that the ends of justice served by taking such actions outweigh the best interest of the public and the defendant in a speedy trial pursuant to the factors described in 18 U.S.C. § 3161(h)(7)(A), (B)(i), (ii), and (iv). The court should set a status hearing approximately 60 days after the arraignment, and the time from March 22, 2021 (the filing of the information) up to and including that new status hearing should be excluded. In support of its motion, the government states as follows:

### FACTUAL BACKGROUND

On March 22, 2021, the defendants were charged by information with offenses related to crimes that occurred at the United States Capitol on January 6, 2021. (Dkt. 12.) An arraignment is scheduled for April 6, 2021. The defendants are not in custody.

In brief, on January 6, as a Joint Session of the United States House of Representatives and the United States Senate convened to certify the vote of the Electoral College of the 2020 U.S. Presidential Election, members of a large crowd that had gathered outside forced entry into the

U.S. Capitol, including by breaking windows and by assaulting members of law enforcement, as others in the crowd encouraged and assisted those acts. Scores of individuals entered the U.S. Capitol without authority to be there. As a result, the Joint Session and the entire official proceeding of the Congress was halted until the Capitol Police, the Metropolitan Police Department, and other law enforcement agencies from the city and surrounding region were able to clear the Capitol of hundreds of unlawful occupants and ensure the safety of elected officials. This event in its entirety is hereinafter referred to as the "Capitol Attack."

For their role in the Capitol Attack, the defendants has been charged with four violations: entering and remaining in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(1); disorderly and disruptive conduct in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(2); disorderly conduct in a Capitol building, in violation of 40 U.S.C. § 5104(e)(2)(D); and parading, demonstrating, or picketing in a Capitol building, in violation of 40 U.S.C. § 5104(e)(2)(G). In summary, the defendants entered the Capitol building on January 6, 2021, after it had been breached by others.

The investigation and prosecution of the Capitol Attack will likely be one of the largest in American history, both in terms of the number of defendants prosecuted and the nature and volume of the evidence. Over 300 individuals have been charged in connection with the Capitol Attack. The investigation continues and the government expects that at least one hundred additional individuals will be charged. While most of the cases have been brought against individual defendants, the government is also investigating conspiratorial activity that occurred prior to and on January 6, 2021. The spectrum of crimes charged and under investigation in connection with the Capitol Attack includes (but is not limited to) trespass, engaging in disruptive or violent

2

conduct in the Capitol or on Capitol grounds, destruction of government property, theft of government property, assaults on federal and local police officers, firearms offenses, civil disorder, obstruction of an official proceeding, possession and use of destructive devices, and conspiracy.

Defendants charged and under investigation come from throughout the United States, and a combined total of over 900 search warrants have been executed in almost all fifty states and the District of Columbia. Multiple law enforcement agencies were involved in the response to the Capitol Attack, which included officers and agents from U.S. Capitol Police, the District of Columbia Metropolitan Police Department, the Federal Bureau of Investigation, the Department of Homeland Security, the Bureau of Alcohol, Tobacco, Firearms and Explosives, the United States Secret Service, the United States Park Police, the Virginia State Police, the Arlington County Police Department, the Prince William County Police Department, the Maryland State Police, the Montgomery County Police Department, the Prince George's County Police Department, and the New Jersey State Police. Documents and evidence accumulated in the Capitol Attack investigation thus far include: (a) more than 15,000 hours of surveillance and body-worn camera footage from multiple law enforcement agencies; (b) approximately 1,600 electronic devices; (c) the results of hundreds of searches of electronic communication providers; (d) over 210,000 tips, of which a substantial portion include video, photo and social media; and (e) over 80,000 reports and 93,000 attachments related to law enforcement interviews of suspects and witnesses and other investigative steps. Moreover, as the Capitol Attack investigation is still on-going, the number of defendants charged and the volume of potentially discoverable materials will only continue to grow.

The government is aware of and takes seriously its obligations pursuant to Federal Rule of

Criminal Procedure 16 and Local Criminal Rule 5.1(a), the provisions of *Brady v. Maryland*, 373 U.S. 83, 87 (1963), *Giglio v. United States*, 405 U.S. 150, 153-54 (1972), and the Jencks Act, 18 U.S.C. § 3500. Accordingly, the government, in consultation with the Federal Public Defender, is developing a comprehensive plan for handling, tracking, processing, reviewing and producing discovery across the Capitol Attack cases. Under the plan, the discovery most directly and immediately related to pending charges in cases involving detained defendants will be provided within the next 30 to 60 days. Cases that do not involve detained defendants will follow thereafter. In the meantime, however, non-detained defendants, such as these defendants, can receive discovery on a preliminary basis, especially following the entry of a protective order.[1]

The government's discovery productions will also be supplemented on an on-going basis. In the longer term, the plan will include a system for storing, organizing, searching, producing and/or making available voluminous materials such as those described above in a manner that is workable for both the government and hundreds of defendants. This latter portion of the plan will require more time to develop and implement, including further consultation with the Federal Public Defender.

## ARGUMENT

Under the Speedy Trial Act, in any case in which a plea of not guilty is entered, a defendant charged in an information or indictment with the commission of an offense must commence within seventy days from the filing date (and making public) of the information or indictment, or from

---

[1] The government will provide defense counsel with preliminary (i.e., not Bates-stamped) discovery after the court acts on its motion to release sealed information (Dkt. 15) and its motion for a protective order (Dkt. 16). In particular, if the Court grants the second motion and enters a protective order, the government will shortly produce Capitol surveillance video capturing the defendants within the Capitol building.

4

the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs. 18 U.S.C. § 3161(c)(1). The Speedy Trial Act allows this Court to grant a continuance and to exclude that time from the Speedy Trial calculation upon a finding "that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(7)(A). Among the factors the Court must consider in determining whether to grant such a continuance are whether the failure to grant a continuance would result in a miscarriage of justice, whether the case is so unusual or complex that it is unreasonable to expect the parties to be able to prepare for trial within the Act's standard time limits, and whether a continuance is necessary to give the attorneys for both the defendant and the government the time necessary for effective preparation. § 3161(h)(7)(B)(i), (ii), (iv). Importantly, "[i]n setting forth the statutory factors that justify a continuance under subsection (h)(7), Congress twice recognized the importance of adequate pretrial preparation time." *Bloate v. United States*, 559 U.S. 196, 197 (2010) (*citing* §3161(h)(7)(B)(ii), (B)(iv)).

An ends-of-justice finding is within the discretion of the Court. *See, e.g., United States v. Rojas-Contreras*, 474 U.S. 231, 236 (1985); *United States v. Hernandez*, 862 F.2d 17, 24 n.3 (2d Cir. 1988). "The substantive balancing underlying the decision to grant such a continuance is entrusted to the district court's sound discretion." *United States v. Rice*, 746 F.3d 1074 (D.C. Cir. 2014).

In this case, an ends-of-justice continuance is warranted under 18 U.S.C. § 3161(h)(7)(A) based on the factors described in 18 U.S.C. § 3161(h)(7)(B)(i)(ii) and (iv). As described above, the Capitol Attack is likely the most complex investigation ever prosecuted by the Department of Justice. Developing a system for storing and searching, producing and/or making available

5

voluminous materials accumulated across hundreds of investigations, and ensuring that such system will be workable for both the government and defense, will take time. Even after a system generally agreeable to the government and the Federal Public Defender is designed and implemented, likely through the use of outside vendors, it will take time to load, process, search and review discovery materials. Further adding to production and review times, certain sensitive materials may require redaction or restrictions on dissemination, and other materials may need to be filtered for potentially privileged information before they can be reviewed by the prosecution.

The need for reasonable time to organize, produce, and review voluminous discovery is among multiple pretrial preparation grounds that Courts of Appeals have routinely held sufficient to grant continuances and exclude the time under the Speedy Trial Act. *See, e.g., United States v. Bikundi*, 926 F.3d 761, 777-78 (D.C. Cir. 2019) (Upholding ends-of-justice continuances totaling 18 months in two co-defendant health care fraud and money laundering conspiracy case, in part because the District Court found a need to "permit defense counsel and the government time to both produce discovery and review discovery"); *United States v. Bell*, 925 F.3d 362, 374 (7th Cir. 2019)(Upholding two-month ends-of-justice continuance in firearm possession case, over defendant's objection, where five days before trial a superseding indictment with four new counts was returned, "1,000 pages of new discovery materials and eight hours of recordings" were provided, and the government stated that "it needed more than five days to prepare to try [the defendant] on the new counts"); *United States v. Vernon*, 593 F. App'x 883, 886 (11th Cir. 2014) (District court did not abuse its broad discretion in case involving conspiracy to commit wire and mail fraud by granting two ends-of-justice continuances due to voluminous discovery); *United States v. Gordon*, 710 F.3d 1124, 1157-58 (10th Cir. 2013)(Upholding ends-of-justice continuance

6

of ten months and twenty-four days in case involving violation of federal securities laws, where discovery included "documents detailing the hundreds financial transactions that formed the basis for the charges" and "hundreds and thousands of documents that needs to be catalogued and separated, so that the parties could identify the relevant ones")(internal quotation marks omitted); *United States v. Lewis*, 611 F.3d 1172, 1177-78 (9th Cir. 2010)(Upholding ninety-day ends-of-justice continuance in case involving international conspiracy to smuggle protected wildlife into the United States, where defendant's case was joined with several co-defendants, and there were on-going investigations, voluminous discovery, a large number of counts, and potential witnesses from other countries); *United States v. O'Connor*, 656 F.3d 630, 640 (7th Cir. 2011)(Upholding ends-of-justice continuances totaling five months and twenty days in wire fraud case that began with eight charged defendants and ended with a single defendant exercising the right to trial, based on "the complexity of the case, the magnitude of the discovery, and the attorneys' schedules").

Here, a vast amount of the evidence gathered by the government is not defendant- or case-specific and is inexplicably intertwined between and among defendants and cases. To give just one example: hundreds of people unlawfully entered the U.S. Capitol on January 6, 2021. Many of those people, including defendant Joshua Bustle, held out their cell phones, apparently filming and photographing the events as they transpired. A large number of those individuals have been apprehended and their cellular telephones seized and searched. Some subset of those phones likely were carried by people near these defendants and may have captured information that could be of value to the government or the defense, such as an expression relating to intent. But merely identifying which phones may contain important evidence related to these specific defendants will be a hugely time-consuming task. And once that evidence is identified, the government cannot

simply turn over the entire contents of someone's cell phone without first reviewing the contents to ensure that it is not producing someone's private information to a complete stranger. *Cf. Riley v. California*, 573 U.S. 373, 396-97 (2014) ("A phone not only contains in digital form many sensitive records previously found in the home; it also contains a broad array of private information never found in a home in any form[.]"). This is just one example of the possible interconnectedness of the discovery materials across the Capitol Attack cases, but it captures why the government is approaching the discovery in these matters holistically. It also demonstrates why this Court should consider all of the evidence gathered by the government thus far when determining a time frame for trial that would best balance the interests of the public and the defendant in a speedy trial with the time needed for the defendant to effectively prepare his defense.

In sum, due to the number of individuals currently charged across the Capitol Attack investigation and the nature of those charges, the on-going investigation of many other individuals, the volume and nature of potentially discoverable materials, and the reasonable time necessary for effective preparation by all parties taking into account the exercise of due diligence, the failure to grant such a continuance in this proceeding would be likely to make a continuation of this proceeding impossible, or result in a miscarriage of justice. Accordingly, the ends of justice served by granting a request for a continuance outweigh the best interest of the public and the defendant in a speedy trial.

Moreover, the ongoing COVID-19 public health crisis further demonstrates that a continuance here serves the ends of justice. On March 5, 2021, Chief Judge Howell issued Standing Order No. 21-10, which allows for a "limited" resumption of criminal jury trials under "stringent restrictions" required to protect the public health. *See In Re: Limited Resumption of Criminal Jury*

8

*Trials in Light of Current Circumstances Relating to the COVID-19 Pandemic*, Standing Order No. 21-10 (BAH).

Standing Order 21-10 addresses the need to exclude time under the Speedy Trial Act in light of these COVID-19-related restrictions. The Chief Judge notes that the time period from March 17, 2020 through March 15, 2021 had already been excluded under the Speedy Trial Act in all criminal cases. *Id.* at 5. The Court then notes that, while it anticipates a limited resumption of criminal trials, the Court's plans permit "no more than one jury selection" to take place on "a given day, and no more than three trials . . . will take place within the courthouse at one time" before August 31, 2021. *Id.* at 4-5. The Court therefore plans to prioritize trials based on factors such as length of detention, whether witnesses would be required to travel from out of town, and previously established trial dates. *Id.* at 4. Finally, noting the then-current statistics regarding COVID-19 case counts and other findings relating to the health and safety measures in this District that impact the ability of the Court to re-open safely for criminal trials, the Chief Judge finds that "for those cases that cannot be tried consistent with" the "health and safety protocols and limitations" set out by the Court's continuity of operations and master trial plans described above, the "additional time period from March 15, 2021 through August 31, 2021" will be "excluded under the Speedy Trial Act as the ends of justice served by the continuances to protect public health and safety and the fair trial rights of a defendant outweigh the best interest of the public and any defendant's right to a speedy trial, pursuant to 18 U.S.C. § 3151(h)(7)(A)." *Id.*

Consistent with that Standing Order, this Court should also exclude time from March 29, 2021 to the date of the next status hearing. The Bustles are not detained and only recently have been charged; no trial dates have been set. Under the prioritization factors the Standing Order

9

articulates, they likely cannot receive a trial date in the near term, given the capacity limitations described in the Standing Order, which the Chief Judge has found are required to protect public health and safety. The Court should therefore exclude this time based on Standing Order 21-10's findings that (1) failing to follow the health and safety protocols set forth in the order, which limit the number of jury trials, would endanger public health and safety, and (2) that the ends of justice served by a continuance to protect public health and safety and the fair trial rights of a defendant outweigh the best interest of the public and any defendant's right to a speedy trial, pursuant to 18 U.S.C. § 3161(h)(7)(A).

Government counsel notified the defense of the filing of this motion. Defense counsel responded that they planned to oppose the motion.

## CONCLUSION

WHEREFORE, the government respectfully requests that this Court grant the motion for a 60-day continuance of the above-captioned proceeding. The government further requests that the Court exclude the time from March 22, 2021 (the filing of the information) up to and including the date of the next status hearing from the time within which the trial must commence under the Speedy Trial Act, 18 U.S.C. § 3161 *et seq*. The Court should grant this request because the ends of justice served by taking such actions outweigh the best interest of the public and the defendant in a speedy trial pursuant to the factors described in 18 U.S.C. § 3161(h)(7)(A), (B)(i), (ii), and (iv).

Respectfully submitted,

CHANNING D. PHILLIPS
Acting United States Attorney
DC Bar No. 415793

By:      /s/
MICHAEL J. ROMANO
Trial Attorney, Detailee
IL Bar No. 6293658
555 4th Street, N.W.
Washington, D.C. 20530
202-307-6691
michael.romano@usdoj.gov