# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | Case No. 1:21-cr-00238 (TFH) |
| v. : | |
| : | |
| JESSICA LOUISE BUSTLE, : | |
| : | |
| Defendant. : | |

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through its attorney, the Acting United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. For the reasons set forth herein, the government requests that this Court sentence Jessica Bustle to three months of home confinement, a probationary term of three years, 40 hours of community service, and $500 in restitution.

### I.   Introduction

The defendant, Jessica Bustle, and her codefendant, Joshua Bustle, participated in the January 6, 2021 attack on the United States Capitol—a violent attack that forced an interruption of the certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential election, injured more than one hundred law enforcement officers, and resulted in more than a million dollars' worth of property damage. The government recognizes that Jessica Bustle did not personally engage in or espouse violence or property destruction and accepted responsibility early. On the other hand, Jessica Bustle sought to minimize, and at times justify, the rioters' conduct on January 6. Her language—as described herein—was incendiary. The defendant stands before this Court to be sentenced on a misdemeanor conviction, but her conduct on January 6, like the conduct of scores of other defendants, took place in the context of a large and violent riot that relied on numbers to overwhelm law enforcement,

1

breach the Capitol, and disrupt the proceedings. But for her actions alongside so many others, the riot likely would have failed.

## II.     Factual and Procedural Background

*The January 6, 2021 Attack on the Capitol*

To avoid exposition, the government refers to the general summary of the attack on the U.S. Capitol. *See* ECF No. 25, at 1-3. As this Court knows, a riot cannot occur without rioters, and each rioter's actions – from the most mundane to the most violent – contributed, directly and indirectly, to the violence and destruction of that day. With that backdrop we turn to the defendant's conduct and behavior on January 6.

*Jessica Bustle's Role in the January 6, 2021 Attack on the Capitol*

On January 6, 2021, Jessica Bustle and Joshua Bustle drove to Washington, D.C., from their home in Bristow, Virginia. They entered the Capitol together at approximately 2:50 p.m., through a second-floor door near the rotunda, and remained inside for about 20 minutes. That door had been breached by other rioters about 30 minutes before they entered. They walked directly into the rotunda, arriving at around the same time as a contingent of police, and eventually left, as police officers cleared the rotunda, through the same door where they entered.

Jessica Bustle wrote on Facebook about the events at the Capitol. Before the riot, she wrote that "[w]e don't win this thing sitting on the sidelines. Excited to stand for truth with my fellow patriots and freedom fighters in DC today." After the riot, she wrote that Vice President of the United States was a "traitor." She acknowledged her goal, and the goal of other rioters, when she wrote "we stormed the Capitol."

In another, very long post, Ms. Bustle wrote:

> The amount of misinformation I'm seeing is insane. Despite what you're being fed, the rally was nothing like what the media is portraying. … When we finally decided

2

>to head over to the capitol we were let in… like literally, my husband and I just WALKED right in with tons of other people. … Yes, some Trump supporters were supposedly unruly … pushed past police to take selfies in congress seats … but seriously … members of congress reassembled in the SAME place that was supposedly destroyed. … People were simply making their presence known. Finally growing a backbone! This election has been undermined and stolen. People are tired of being LIED to and CHEATED. We need a Revolution! We can accept an honest and fair election but this is NOT fair and patriots don't want to see their country brought into communism and destroyed over a lie. And I'm proud of them from [sic] standing up!

Jessica Bustle has admitted that she knew she did not have permission to enter the Capitol building and that she acted with the intent to parade, demonstrate, and picket within the building. In part, she sought to parade, demonstrate, and picket against the certification of the electoral vote. *See* Statement of Offense ¶¶ 10-13; PSR (Jessica Bustle) at ¶¶ 18-21. At the change of plea hearing, Jessica Bustle admitted to writing several of the statements of above, which are memorialized in the Statement of Offense. She also noted that she also said other, kinder things on Facebook such as "Pray for America!"[1]

*The Charges and Plea Agreement*

On March 4, 2021, Jessica Bustle was charged by complaint with violating 18 U.S.C. §§ 1752(a)(1) and (2), and 40 U.S.C. §§ 5104(e)(2)(D) and (G). On March 8, 2021, she was arrested at her home in Bristow, Virginia. On March 22, 2021, Jessica Bustle was charged by Information with the same crimes. On June 14, 2021, she pleaded guilty to Count Four of the Information, charging her with a violation of 40 U.S.C. § 5104(e)(2)(G). In her plea agreement, Jessica Bustle agreed to pay $500 in restitution to the Department of the Treasury.

---

[1] Jessica Bustle likely was referring to the following post, which reads in full: "Pence is a traitor. We stormed the capital [sic]. An unarmed peaceful woman down the hall from us was shot in neck by cops. It's insane here. We're safe and heading home but have limited service. Video of woman will be shown on (banned.video) tune in now! Pray for America!!!!"

3

### III. Statutory Penalties

The defendant now faces a sentencing on a single count of 40 U.S.C. § 5104(e)(2)(G). As noted by the plea agreement and the U.S. Probation Office, the defendant faces up to six months of imprisonment and a fine of up to $5,000. As this offense is a Class B Misdemeanor, the Sentencing Guidelines do not apply to it. 18 U.S.C. § 3559; U.S.S.G. §1B1.9.

### IV. Sentencing Factors Under 18 U.S.C. § 3553(a)

In this case, sentencing is guided by 18 U.S.C. § 3553(a). Some of the factors this Court must consider include: the nature and circumstances of the offense, § 3553(a)(1); the history and characteristics of the defendant, *id.*; the need for the sentence to reflect the seriousness of the offense and promote respect for the law, § 3553(a)(2)(A); the need for the sentence to afford adequate deterrence, § 3553(a)(2)(B); and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. § 3553(a)(6). We therefore turn to these factors.

#### A. The Nature and Circumstances of the Offense

The attack on the U.S. Capitol, on January 6, 2021 is a criminal offense unparalleled in American history. It represented a grave threat to our democratic norms; indeed, it was the one of the only times in our history when the building was literally occupied by hostile participants. By its very nature, the attack defies comparison to other events. So, too, does the conviction this defendant now faces. Picketing, demonstrating, or parading at the Capitol as part of the riot on January 6 is not like picketing at the Capitol some other day, without other rioters present.

While each defendant should be sentenced based on their individual conduct, as we now discuss, this Court should note that each individual person who entered the Capitol on January 6 did so under the most extreme of circumstances. As a person entered the Capitol, they would—at

a minimum—have crossed through numerous barriers and barricades and heard the throes of a mob. Depending on the timing and location of their approach, they also may have observed extensive fighting with law enforcement and likely would have smelled chemical irritants in the air. Make no mistake, no rioter was a mere tourist that day.

Additionally, while looking at the defendant's individual conduct, we must assess such conduct on a spectrum. This Court, in determining a fair and just sentence on this spectrum, should look to a number of critical factors, to include: (1) whether, when, how the defendant entered the Capitol building; (2) whether the defendant engaged in any violence or incited violence; (3) whether the defendant engaged in any acts of destruction; (4) the defendant's reaction to acts of violence or destruction; (5) whether during or after the riot, the defendant destroyed evidence; (6) the length of the defendant's time inside of the building, and exactly where the defendant traveled; (7) the defendant's statements in person or on social media; (8) whether the defendant cooperated with, or ignored, law enforcement; and (9) whether the defendant otherwise exhibited evidence of remorse or contrition. While these factors are not exhaustive nor dispositive, they help to place each individual defendant on a spectrum as to their fair and just punishment.

Shortly after 2:50 p.m., Jessica Bustle entered the Capitol through a door on the east side of the Capitol Building's second floor, near the rotunda. She entered immediately ahead of Joshua Bustle, who followed closely behind her, appearing to film her with his cell phone. After entering, Jessica Bustle immediately walked toward the rotunda. She happened to enter the rotunda around the same time as a detachment of Metropolitan Police Department officers arrived and began to corral the rioters. Shortly thereafter, the Metropolitan Police Department officers and a group of U.S. Capitol Police officers began to tighten their lines, making the crowd of rioters more compact

and eventually forcing them from the rotunda. Jessica Bustle was among this crowd. After leaving the rotunda, she left the Capitol through the same doors where she had entered.

The government has no evidence that Jessica Bustle engaged in any violence or destruction of property; nor that she destroyed evidence after the riot. She entered the building approximately thirty minutes after other rioters first breached that door. By the time she entered, the doors were wide open, and police officers stood on either side of the door as a group of rioters crowded the opening. And yet, there were clear signs of damage. The doors through which she entered had their windows smashed in. She would have heard an alarm sounding throughout the Capitol rotunda and its antechamber: a loud, high-pitched, continuous beeping, similar to a smoke alarm.

While the nature and circumstances of the offense supports a sentence of incarceration, for misdemeanor defendants who, like Jessica Bustle, committed fewer of the non-exclusive factors listed above, the government is more likely to recommend a more lenient sentence.

### B. The History and Characteristics of the Defendant

As set forth in the PSR, Jessica Bustle's criminal history consists of several traffic infractions, with the disposition unclear as to some of these matters, plus a misdemeanor disorderly conduct charge. (Dkt. 27 ¶¶ 29-37.) If the Sentencing Guidelines did apply to her offense of conviction, she likely would have zero points. USSG § 4A1.2(c)(2). Accordingly, she would be in Criminal History Category I. USSG §§ 4A1.1, 5A. Jessica Bustle has held full-time employment in the past but is now a full-time parent. This factor supports a more lenient sentence.

The government also notes that from the outset, through her attorney, Jessica Bustle expressed a desire to plead guilty, acknowledge her conduct, and promptly resolve her case. When recommending an appropriate sentence, the government gives significant weight to the defendant's early resolution of this case.

### C. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

The attack on the U.S. Capitol building and grounds, and all that it involved, was an attack on the rule of law. "The violence and destruction of property at the U.S. Capitol on January 6 showed a blatant and appalling disregard for our institutions of government and the orderly administration of the democratic process."[2] As with the nature and circumstances of the offense, this factor supports a sentence of incarceration, as it will in most cases arising out of the riot on January 6, 2021, including in misdemeanor cases.

### D. The Need for the Sentence to Afford Adequate Deterrence

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this defendant. 18 U.S.C. § 3553(a)(2)(B-C), *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010). The demands of general deterrence weigh in favor of incarceration, as they will for nearly every case arising out of the violent riot at the Capitol. Indeed, general deterrence may be the most compelling reason to impose a sentence of incarceration. For the violence at the Capitol on January 6 was cultivated to interfere, and did interfere, with one of the most important democratic processes we have: the transfer of power. As noted by Judge Moss during sentencing, in *United States v. Paul Hodgkins*, 21-cr-188-RDM:

> [D]emocracy requires the cooperation of the governed. When a mob is prepared to attack the Capitol to prevent our elected officials from both parties from performing their constitutional and statutory duty, democracy is in trouble. The damage that [the defendant] and others caused that day goes way beyond the several-hour delay in the certification. It is a damage that will persist in this country for decades.

---

[2] Federal Bureau of Investigation Director Christopher Wray, Statement before the House Oversight and Reform Committee (June 15, 2021) (hereinafter "FBI Director Wray's Statement"), available at https://oversight.house.gov/sites/democrats.oversight.house.gov/files/Wray%20 Testimony.pdf

Tr. at 69-70. Indeed, the attack on the Capitol means "that it will be harder today than it was seven months ago for the United States and our diplomats to convince other nations to pursue democracy. It means that it will be harder for all of us to convince our children and our grandchildren that democracy stands as the immutable foundation of this nation." *Id.* at 70.

The gravity of these offenses demand deterrence. This was not a protest. *See id.* at 46 ("I don't think that any plausible argument can be made defending what happened in the Capitol on January 6th as the exercise of First Amendment rights."). And it is important to convey to future rioters and would-be mob participants—especially those who intend to improperly influence the democratic process—that their actions will have consequences. There is possibly no greater factor that this Court must consider.

Jessica Bustle's words highlight the need for deterrence. According to Jessica Bustle, the Vice President of the United States was a "traitor." She acknowledged her goal, and the goal of other rioters, when she wrote "we stormed the Capitol." She wrote that the media was misrepresenting the riot, which was flatly untrue: violence was obvious and abundant. She made the riot appear peaceful by claiming that "my husband and I just WALKED right in with tons of other people." This ignored the violence that preceded the Bustles' entry into the Capitol, and allowed them to enter, the effects of which they would have seen and heard: barricades that had been moved or destroyed; windows that had been smashed at their point of entry; and alarms sounding throughout the building. She described rioters as unruly, but their actions harmless, noting that "members of congress reassembled in the SAME place that was supposedly destroyed." Those members of Congress did reassemble, but only after hours of sheltering in fear for their lives. The dissonance is startling.

Finally, of the argument that people "shouldn't have gone into the capitol at all," Jessica Bustle wrote,

> People were simply making their presence known. Finally growing a backbone! This election has been undermined and stolen. People are tired of being LIED to and CHEATED. We need a Revolution! We can accept an honest and fair election but this is NOT fair and patriots don't want to see their country brought into communism and destroyed over a lie. And I'm proud of them from [*sic*] standing up!

In Jessica Bustle's view, the riot was justified, the rioters should be proud of their involvement, and the rioters' conduct was beyond reproach. This provided a framework within which Jessica Bustle allowed herself to ignore the real evidence, which was easy to find, that all the violence was perpetrated by people who shared her goal of storming the Capitol and stopping the certification of the Electoral College vote. And, more seriously, she held out her own experience as a reason for others to ignore indisputable video evidence of violence.

On the one hand, for a defendant like Jessica Bustle who accepts responsibility early, the government expects that the goal of specific deterrence will be obtained by the prosecution and conviction itself. But on the other hand, the defendant's failure to acknowledge the dangers and violence of January 6, 2021 underscore the need for her own specific deterrence. This factor favors incarceration.

### E.  The Need to Avoid Unwarranted Sentencing Disparities

As the Court is aware, the government has charged hundreds of individuals for their roles in this one-of-a-kind assault on the Capitol, ranging from unlawful entry misdemeanors, to assault on law enforcement officers, to conspiracy to corruptly interfere with Congress. Each offender must be sentenced based on their individual circumstances, but with the backdrop of January 6 in mind. Moreover, each offender's case will exist on a spectrum that ranges from conduct meriting a probationary sentence to crimes necessitating years of imprisonment. The misdemeanor

defendants will generally fall on the lesser end of that spectrum, but misdemeanor breaches of the Capitol on January 6, 2021 were not minor crimes. A probationary sentence should not necessarily become the default. Indeed, the government invites the Court to join Judge Lamberth's admonition that "I don't want to create the impression that probation is the automatic outcome here because it's not going to be." *United States v. Anna Morgan-Lloyd*, 1:21-cr-00164 (RCL), Tr. 6/23/2021 at 19. At this time, no unwarranted sentencing disparities exist, nor does the government's request create one.

V. **Conclusion**

Sentencing here requires that the Court carefully balance the various factors set forth in 18 U.S.C. § 3553(a). As detailed above, some of those factors support a sentence of incarceration and some support a more lenient sentence. Balancing these factors, the government recommends that this Court sentence Jessica Bustle to three months of home confinement, three years of probation, 40 hours of community service, and $500 in restitution. Such a sentence protects the community, promotes respect for the law, and deters future crime by imposing restrictions on her liberty as a consequence of her behavior, while recognizing her early acceptance of responsibility. Additionally, such a sentence recognizes that some, but not all of the factors enumerated in Section IV.A., above, apply to her case. It also allows continued monitoring of Jessica Bustle in the event of future participation in similar conduct—a concern occasioned by the self-justification, and calls for revolution, as seen in her Facebook postings.

        Respectfully submitted,

        CHANNING D. PHILLIPS
        ACTING UNITED STATES ATTORNEY

By:   */s/ Michael J. Romano*
        MICHAEL J. ROMANO
        Trial Attorney, Detailee
        IL Bar No. 6293658
        555 4th Street, N.W.
        Washington, D.C. 20530
        202-307-6691
        michael.romano@usdoj.gov