```
 1                    BEFORE THE UNITED STATES DISTRICT COURT
                            FOR THE DISTRICT OF COLUMBIA
 2

 3       UNITED STATES OF AMERICA,          .
                                            .   Case Number 21-238
 4                Plaintiff,                .
                                            .
 5           vs.                            .
                                            .
 6       JOSHUA BUSTLE and                  .
         JESSICA BUSTLE,                     .   August 4, 2021
 7                                          .   12:05 p.m.
                  Defendants.               .
 8       - - - - - - - - - - - - - - - -

 9                        TRANSCRIPT OF SENTENCING HEARING
                         BEFORE THE HONORABLE THOMAS F. HOGAN
10                          UNITED STATES DISTRICT JUDGE

11       APPEARANCES:

12       For the United States:        MICHAEL ROMANO, AUSA
                                       United States Attorney's Office
13                                     555 Fourth Street Northwest
                                       Washington, D.C. 20530
14
         For Defendant
15       Joshua Bustle:                TIMOTHY ANDERSON, ESQ.
                                       2492 North Landing Road
16                                     Suite 104
                                       Virginia Beach, Virginia 23456
17
         For Defendant
18       Jessica Bustle:               NABEEL KIBRIA, ESQ.
                                       Ervin Kibria PLLC
19                                     1627 I Street Northwest
                                       Suite 600
20                                     Washington, D.C. 2000

21       Official Court Reporter:      SARA A. WICK, RPR, CRR
                                       333 Constitution Avenue Northwest
22                                     U.S. Courthouse, Room 4704-B
                                       Washington, D.C. 20001
23                                     202-354-3284

24
         Proceedings recorded by stenotype shorthand.
25       Transcript produced by computer-aided transcription.
```

P R O C E E D I N G S

(All participants present via video conference.)

COURTROOM DEPUTY:  Your Honor, this afternoon is the matter of United States versus Joshua and Jessica Bustle, Criminal Record 21-238.

I ask the parties to identify yourselves for the record, please.

MR. ROMANO:  Good afternoon, Your Honor.  Michael Romano on behalf of the United States.

MR. ANDERSON:  Good afternoon, Your Honor.  Tim Anderson for Joshua Bustle.

MR. KIBRIA:  Good afternoon, Your Honor.  Nabeel Kibria on behalf of Jessica Bustle.

THE COURT:  Both Mrs. Bustle and Mr. Bustle, you can hear us all right?

DEFENDANT JOSHUA BUSTLE:  Yes, Your Honor.  Good afternoon.

DEFENDANT JESSICA BUSTLE:  Yes, Your Honor.

THE COURT:  Thank you.  Mr. Bustle, your lighting is such, you show as a silhouette.  I cannot see you too well, but I assume that is you there.  All right.

We are ready to proceed to the sentencing.  I have received the presentence report from the probation officer in this matter.  I have reviewed those and discussed them with her.  I have received the sentencing memorandum from the federal

1   government, a very excellent one done concerning these types of

2   cases, and brief ones from counsel for each defendant.

3        And I'm going to have the government address us first and

4   have each defense counsel address us and each defendant can

5   address the Court as well, can allocute as to the statements

6   they want me to hear.

7        I'm concerned, because of the nature of the events, with

8   Mrs. Bustle, what she said and did and the nature of this

9   offense.  They are misdemeanor offenses that you've pled to, and

10  the issue is whether or not incarceration is appropriate in this

11  case.  As to probation, I don't think anyone should start off in

12  these cases with any presumption of probation.  I think the

13  presumption should be that these offenses were an attack on our

14  democracy and that jail time is usually -- should be expected.

15       I will hear from the government and counsel and from the

16  Bustles.

17       Mr. Romano, I appreciate the memorandum.  I reviewed the

18  matrix that you have proposed.  That's a reasonable approach, I

19  believe.  You're muted.

20            MR. ROMANO:  Thank you, Your Honor.  I make that

21  mistake too often.  Can you hear me all right?  I know the

22  computer I'm using, sometimes the microphone is a little weak.

23            THE COURT:  No, we can hear you.

24            MR. ROMANO:  Okay.  Thank you.

25       So first as a housekeeping matter, Your Honor, the

1    government moves to dismiss Counts 1 through 3 of the

2    information as to both defendants.  That was a part of the plea

3    agreement.  We're at sentencing now.  We would make that motion.

4            THE COURT:  To dismiss those counts?

5            MR. ROMANO:  Yes.

6            THE COURT:  I will at the conclusion of this hearing.

7    I will wait until we've concluded and make sure --

8            MR. ROMANO:  Okay.  Then, Your Honor, as the Court is

9    familiar from our sentencing memorandum, I will start with the

10   sentence that we're seeking, and then I will go through my

11   allocution.

12       The government is seeking a sentence of one month home

13   confinement as to Mr. Bustle, three months as to Ms. Bustle,

14   with three years' probation as to each, a $500 restitution

15   assessment for each of them as agreed to in the plea agreement,

16   payable to the Department of the Treasury, a period of forty

17   hours of community service for each of them.

18       We note that the presentence report also recommends that

19   the Court impose a $2,000 fine as to Joshua Bustle.  This is not

20   a specific part of our request, but if the Court finds it

21   appropriate, we don't object to it.

22       As the Court knows, this matter is not governed by the

23   sentencing guidelines, being a misdemeanor punishable by a

24   maximum of six months.  So the factors that the Court has to

25   consider are taken from 18 U.S. Code Section 3553(a).  And those

factors include:  The nature and circumstances of the offense;
the need for the sentence to reflect the seriousness of the
offense, promote respect for the law, and provide for just
punishment; to deter criminal conduct; to protect the public
from further crimes by these individuals; and to avoid
unwarranted sentencing disparities between similarly situated
defendants.

Your Honor, we submit that in a case like this these
factors provide mixed guidance.  Some factors, as we outlined,
favor incarceration, some favor a more lenient sentence.  I want
to start with the seriousness of the offense, the need to
promote respect for the law, and to provide for just punishment.

We would submit that for this case, as in any case
associated with the Capitol riot, this factor recommends a
sentence of incarceration.  We would note that the statute under
which the Bustles were prosecuted could also be used to
prosecute single protestors or small group protestors who
briefly disrupt Congress, such as by shouting in the gallery and
then are hauled out.

This case isn't like those cases.  This is not a minor
crime.  And the conduct that they exhibited and the conduct of
other rioters is not just a difference of degree from this other
kind of conduct; it's a difference of the kind.  The riot writ
large was an attack on the seat of the legislative branch of the
United States.  It was an attack on the peaceful transition of

power between administrations, a cornerstone of our democracy and something that has existed in our country up until the events of January 6th, 2021.

I note what the Court said at the beginning of this hearing, which I think resembles what Judge Lamberth said in a prior sentencing, about how people should not necessarily assume that probation is going to be the default, which I think is an important thing to note here.

And I think it's worth considering that when looking at this factor, the seriousness of the offense, the need to promote the respect for law, and the need to provide for just punishment, probationary sentences for Capitol rioting cases, if they become the norm, could run the risk of undervaluing the seriousness of the offense and that punitive measures may be necessary to promote the goals of this sentencing factor.

I want to turn now to general deterrence.  This factor is intertwined with the seriousness of the offense.  General deterrence requires us to acknowledge that the property damage, the injury, the destruction, and the fear that members of Congress and their staff experienced was made possible by collective action on January 6th.  No rioter acted in a vacuum. Each additional person who entered the Capitol building made it that much harder for the police to regain control of different parts of the building, to keep members of Congress and their staff safe, and ultimately to regain control of the exterior of

the building.  And in particular, that's important given the level of violence and injury caused in certain parts outside the building where fighting took place.

General deterrence also requires us to acknowledge that many members of the riot were taking pictures of themselves, were recording themselves, were recording the events, were uploading evidence of their crimes in realtime or shortly thereafter to various social media sites.  Members of the riot were writing their own narratives in many cases about how proud they were of what they accomplished.

And so when we consider the goal of general deterrence, we're not talking about dissuading individuals from bringing signs into the Capitol and picketing.  We're talking about dissuading a group from violently storming the Capitol the next time, for example, we certify the results of an electoral vote or another major national election.

We promote general deterrence by imposing consequences. Consequences are essential.  They discourage future criminal behavior.  And we note that general deterrence is especially important here where the crime is so public, so widely known, and so closely followed.

It is also especially important where, as in the cases arising out of January 6th, almost every member of the riot was able to leave the Capitol building and grounds on that day without consequences.

1        So those two factors, we submit, support a sentence of

2    incarceration and will support that for the vast majority of

3    such cases.

4        The nature and circumstances of this offense we turn to

5    next, Your Honor, and that presents a more mixed and nuanced

6    question.  In our pleading, we articulated a variety of factors

7    for the Court to consider in evaluating between different

8    defendants charged with offenses from the Capitol riot.

9        The Bustles entered through the east rotunda doors.  They

10   weren't a part of the group that originally breached the doors.

11   There was about 20 to 30 minutes between breach of the doors and

12   their entry.  And we estimate they spent about 20 minutes inside

13   the building.

14       So even though they weren't a part of that initial breach,

15   the damage and the alarms, we submit, would have been obvious.

16   The windows of the door where they entered were busted in.

17   Alarms were going off throughout the building.  But there's no

18   evidence that they engaged in any violence, that they incited

19   violence, that they encouraged violence, or that they reacted to

20   violence caused by others in a way that led to greater risk.

21       At the point where law enforcement officers attempted to

22   clear the rotunda, it appears that they complied, although it's

23   hard to tell because of the size of the crowd and the fact that

24   the crowd moves into the background of the camera angle as the

25   rotunda was cleared.

1          And as we look at the nature and circumstances of the

2     offense, Your Honor, we note that there are some things that

3     make the two defendants' conduct somewhat different, even though

4     they were in the Capitol, in the same parts of the Capitol for

5     the same amount of time.  And that's Jessica Bustle's Facebook

6     postings where she wrote that Mike Pence was a traitor, where

7     she wrote that they stormed the Capitol, where she wrote of the

8     need for revolution.  We submit that this makes the nature and

9     circumstances of her offense greater than his.

10          Likewise, the false information about whether or not there

11     was violence at the Capitol and who caused the violence, this

12     both makes the nature and circumstances of the offense somewhat

13     more serious and also supports a heightened need for specific

14     deterrence and the promotion of respect for the law.

15          But in general, the nature of the conduct within the

16     building, the Facebook posts aside, which we take very

17     seriously, support a lesser sentence here.

18          Next, we turn to the history and characteristics of the

19     offenders.  We note that were this matter subject to the

20     sentencing guidelines, they would not have any criminal history

21     score, or we believe they would not.

22          We placed substantial weight in making our sentencing

23     recommendation on the early acceptance of responsibility by the

24     Bustles.  I believe that they were the first defendants who were

25     charged solely with misdemeanor offenses to plead guilty.  I

might be wrong about that, but they were certainly among the first, and they are among the first to be sentenced.  I think I was originally planning to say that they were the fourth and fifth defendants to be sentenced, but I think Judge Jackson got to one this morning.  So they're now number 5 and 6.

And that early acceptance of responsibility hopefully shows a desire not to engage in further criminal conduct, hopefully shows that the Court doesn't need to tailor its sentence as specifically to deterring these defendants from committing future criminal conduct, hopefully reveals a desire to rehabilitate and not participate in this sort of behavior in the future.

It also saves the government resources, which in these cases especially we know is not a small thing.  The sentencing guidelines in general note, when giving credit for acceptance of responsibility and reducing offense levels, the importance of saving the time in preparing for trial and saving resources.

And here we note that the investigation and prosecution of offenses arising out of the Capitol riot is one of the most involved, complex, and resource-intensive investigations in American history.  In the approximately seven months since the riot happened, more than 500 people have been charged with offenses.  Others remain under investigation.  I'm sure the Court is familiar with the scope and scale of our efforts to process evidence and provide discovery and with the fact that

1    many of these cases have interlocking evidence where one

2    defendant's cell phone, for instance, might capture actions by

3    another defendant.

4         And so all of these factors make prosecution of the Capitol

5    riot writ large and prosecution of individual cases within the

6    Capitol riot very resource-intensive tasks.

7         And so given this factor, the early disposition of the case

8    is certainly worth consideration.  It certainly speaks well to

9    these defendants and suggests that a more lenient sentence is

10   appropriate.

11        We also note that as is noted in the presentence report,

12   that Ms. Bustle is expecting a child.  That also certainly

13   weighs into our analysis here in terms of what is appropriate

14   and what is needed.

15        So Your Honor, I'm happy to answer any questions if the

16   Court has any, but to reiterate, our request here is for home

17   confinement for both defendants, one month for Mr. Bustle, three

18   months for Ms. Bustle, and for each defendant to be sentenced to

19   a term of three years of probation, a payment of restitution in

20   the amount of $500 each, and 40 hours of community service.

21             THE COURT:  The government does not take a position on

22   the suggested fine of the probation officer?

23             MR. ROMANO:  That's right, we didn't take a position,

24   Your Honor.  I did see that the presentence report writer

25   suggested that a fine be imposed.  We don't object to it, but

1    we're not taking a position affirmatively one way or the other.

2            THE COURT:  Judge Jackson's case this morning you

3    referenced just now, that was the same misdemeanor offense as in

4    this case?

5            MR. ROMANO:  It was.  I believe the defendant there

6    was sentenced to a term of six months of incarceration, and I

7    think that was driven by the fact that that defendant had been

8    detained pretrial.  I don't know the circumstances of the

9    offense, why the defendant was detained pretrial.  I suspect it

10   had to do with criminal history.  But I don't know the

11   specifics.

12       I can represent that there was another case, U.S. v.

13   Michael Curzio, where there was a similar sentence imposed where

14   the defendant was right up on the verge of six months and had

15   pleaded to the same offense.  I know his -- I'm fairly certain

16   that his case, the sentence was driven, again, by pretrial

17   detention, and that was driven by his criminal history.  I know

18   Mr. Curzio had a fairly serious criminal history, to include a

19   prior attempted murder charge, which probably led to his

20   pretrial detention.  I just don't know what the circumstance was

21   for the case before Judge Jackson.

22           THE COURT:  Judge Lamberth's case was -- the other one

23   was a female that was given probation.

24           MR. ROMANO:  Yes.  I think there are a few things that

25   distinguish this case from that case, Your Honor.  Both of them

certainly involve early acceptance of responsibility.

As to Ms. Bustle -- the case before Judge Lamberth, the defendant's name was Anna Morgan-Lloyd.  She had also written about the riot on Facebook, but I will submit some of her postings were less incendiary than the postings that we're dealing with here.  She wrote generally about being proud of participating.  She wrote of January 6th as the best day ever but didn't write specifically about the vice president as a traitor, efforts to, you know, indulge in a revolution, that sort of thing.

She was in the Capitol, I believe, for less time overall, and she was in a specific hallway.  So that makes her conduct a little bit less serious.

And I think there were also somewhat greater efforts at being cooperative.  I believe that she submitted to an interview in which she gave access to her phones.  Here, I don't think there was that initial interview, and we obtained the defendant's phones through a warrant.  I'm not saying they did anything inappropriate or obstructive, but Ms. Morgan-Lloyd, I think, made somewhat greater efforts upfront to be immediately cooperative.

THE COURT:  She also went on Fox News the next day and somewhat discounted or changed her statement somewhat?

MR. ROMANO:  That's true.

THE COURT:  Which concerned me whether it was true

1    acceptance of responsibility or just temporary.

2         All right.  Thank you, Mr. Romano.  Again, I appreciate

3    your brief.

4         I would like to hear from defense counsel at this time.

5    Who would like to address the Court first?

6         MR. ANDERSON:  Your Honor, if I could go first, I

7    would appreciate it.

8         THE COURT:  All right.  Mr. Anderson.

9         MR. ANDERSON:  Judge, on behalf of Mr. Bustle, I would

10   like to say just a couple of things preliminarily.

11        I think that the Court should at least review 18 U.S.C.

12   2102 to define what a riot is.  And I will just read it into the

13   record.  This is from the code.  "Anywhere in Title 18, the term

14   'riot' means an act or acts of violence by one or more persons

15   part of an assemblage of three or more persons for which act or

16   acts constitute a clear and present danger of or shall result in

17   damage or injury to property or other person or persons of an

18   individual or a threat or threats of the commission of acts of

19   violence by one or more persons of an assemblage of three or

20   more," and it goes on.

21        And the reason that I'm starting off with that is I take

22   particular exception to the term "Capitol rioters" being used

23   uniformly to everybody that participated in what happened on

24   January 6.  This was not a riot as far as Mr. Bustle is

25   concerned.

1      THE COURT:  Mr. Bustle went in, and Ms. Bustle sends

2 out Facebook and other social media comments approving and

3 praising the acts, but they didn't participate in violence?

4      MR. ANDERSON:  Well, Judge, I'm not talking about

5 Mrs. Bustle.  I'm talking about Mr. Bustle.

6      THE COURT:  They were together.  They went together.

7      MR. ANDERSON:  Sure.  So what did they do?  They

8 walked into a breached building.  They walked around.  There's

9 even pictures of them right next to police officers casually

10 talking to them.  And they left.  They did not participate.

11 Mr. Bustle did not participate in a riot.  And I take exception

12 to that, because that has all kinds of connotation to the actual

13 behavior that is involved here.

14      Now, a riot did occur on January 6th.  I'm not saying that.

15 But Mr. and Mrs. -- or Mr. Bustle, at least, certainly did not

16 damage any property.  He didn't go in with violence, and he

17 didn't make any threats of violence.  He walked into the

18 building, walked around, and left.

19      Now, that's unlawful.  I'm not saying that that's not --

20      THE COURT:  The building he went into, there were

21 alarms going off.  There were broken windows and doors where he

22 walked in.  There was pepper spray and other substances in the

23 air.  There were masses of people.  If you look at the pictures,

24 it was not just one or two people, but a mass of people.  It was

25 not a normal situation.

1      MR. ANDERSON:  In no way am I saying it is, Judge, and

2  in no way am I saying that they didn't commit a crime, but what

3  I'm trying to start the conversation on is I think saying

4  "Capitol rioters" uniformly creates an annotation, an unfair

5  annotation towards Mr. Bustle that he somehow engaged in a riot.

6      Now, he broke the law, and we're not saying he's innocent

7  of the crime of unlawfully entering a building or what he pled

8  to, unlawfully picketing.  But to go so far to say he is a

9  rioter, I take particular exception to that.  And I think that

10  by saying "rioter," it taints even the Court's mind of what the

11  appropriate punishment is.

12      As the government just said, and there's no evidence to the

13  contrary, Mr. Bustle entered the building 20 or 30 minutes after

14  the breach.  They walked around in the building for 20 minutes.

15  There's pictures attached to the indictment of them standing

16  within feet of police officers, casually talking to them.  They

17  created no dangerous situation of their own actions.

18      And I just think that that's important, and I think that

19  was very much important in the case of Anna Morgan-Lloyd where

20  the Court found that the appropriate disposition was no

21  incarceration but probation only.

22      If we can separate the word "riot" from what happened here,

23  you have unlawful entry of a building.

24      THE COURT:  Why did he go in the building if not to

25  support what had happened?

1           MR. ANDERSON:   Judge, I think that -- I think that

2     the -- there's different types of people that were on

3     January 6th.   There's people that came with weapons and came to

4     be rioters, and then there's other people that were there that

5     were caught up in the moment of wanting to see what was going

6     on.   And a lot of people were taking Facebook video and so forth

7     almost in a reporter-like fashion.

8           And I don't think that there's any evidence that the

9     government could point to that would say that anything Joshua

10    Bustle did before, during, or after would be even close to a

11    riot.   And I think that puts him most close to the Anna

12    Morgan-Lloyd situation, which the appropriate disposition for a

13    class B petty offense with no criminal record, with early

14    acceptance of responsibility, with full cooperation with the

15    government would yield a no incarceration, probation-only

16    sentence.

17          Anything more -- to treat Joshua Bustle differently than

18    Anna Morgan-Lloyd would be unjust.   She received -- the only

19    difference between him and Anna Morgan-Lloyd is Anna

20    Morgan-Lloyd was a grandmother.   But Josh Bustle has no criminal

21    record, did nothing other than observe what was happening, was

22    curiously observing, and left.

23          Now, Mr. Bustle has paid a substantial price for what has

24    happened from the court of public opinion.   Because everybody is

25    called a rioter, he's lost his job, he's publicly shamed.

1    They're having to move from their home in Virginia to South
2    Carolina to start a new life because they have lost everything
3    in the court of public opinion.  And so -- so Mr. Bustle has
4    paid a substantial price for what has happened and what he did,
5    from the loss of his income and now having to relocate to start
6    over in a different place.
7         And so, Judge, in no way do I want to minimize what
8    happened on January 6th.  What happened on January 6th was
9    terrible and was outrageous, and many people should be punished
10   for what they did.
11        And Mr. Bustle should be punished for what he did, but what
12   he did was he entered a breached door, walked around, and left.
13   And there should be no purpose of giving him any more punishment
14   than what Anna Morgan-Lloyd received in this particular
15   situation.  And accordingly, I would ask the Court to impose the
16   same sentence.
17        Now, as far as a fine goes, I would ask the Court not to
18   impose a fine, because Mr. Bustle has lost his job.  His income
19   sources have -- as a Realtor, he's lost that ability.  And so
20   he's -- a special assessment is appropriate.  The restitution is
21   appropriate.  Community service is appropriate.  But I would ask
22   the Court not to impose a fine because of the other punishments
23   Mr. Bustle has already received in the court of public opinion.
24             THE COURT:  Thank you.
25        Does the government want to respond to that briefly?

1            MR. ROMANO:  Yes.  Thank you, Your Honor.

2       We don't think that the use of the term "rioter" is

3  inappropriate to describe the people who participated in

4  January 6th generally.  I think you already noted in some of

5  your questions to Mr. Anderson, Your Honor, the nature of what

6  any person who stepped through the doors to the Capitol was

7  stepping into, what they would have known, what they would have

8  seen.

9       But also looking at the terminology in 18 U.S.C. 2102, I

10  don't find issue with what's written here.  One of the

11  categories talks about an act or acts of violence by one or more

12  persons part of an assemblage of three or more persons which act

13  or acts shall constitute a clear or present danger of or shall

14  result in damage or injury to the property of any other person

15  or the person of any other individual.

16       That seems like a pretty good, if a bit legalese,

17  description of what happened on January 6th.  There certainly

18  were people who committed acts of violence.  There certainly

19  were people who committed property destruction.  They did it in

20  a crowd, and the crowd helped enable the violence and the

21  property destruction and the fear to take place.

22       The police officers were overwhelmed because of the size of

23  the crowd.  They took hours to clear the building because of the

24  size of the crowd.  In the lower west terrace and in other parts

25  of the exterior and some parts of the interior of the building,

1    police officers were fighting with people for hours, and every

2    minute that police officers took inside taking longer to clear

3    the building was an extra minute that that fighting could go on.

4    It was an extra minute that officers like the ones who testified

5    before Congress recently were stuck in the fighting because

6    their compatriots were having to address problems going on

7    somewhere else that made the situation more dangerous.

8         I certainly understand that there may be a difference of

9    opinion about this and that the defense takes a different

10   position, but the United States thinks that the use of the

11   term "riot" is completely appropriate here.

12              THE COURT:  Thank you.

13        Let me turn to counsel of Mrs. Bustle next, please.

14              MR. KIBRIA:  Yes, Your Honor.  Thank you.

15        So we would like to state first and foremost that, you

16   know, the government through Mr. Romano has suggested that a

17   probationary term be appropriate.  And, you know, our rule of

18   law here in this country is founded on also the key principle of

19   precedent.

20        And so through Mr. Romano's suggestion and looking at

21   precedent set by the Anna Morgan-Lloyd case, we do feel that the

22   Court need not look any further than, you know, the suggestion

23   and the recommendation that probation be the sentence here.  And

24   we believe that is --

25              THE COURT:  I think each individual before the Court

in any sentence, this case or any other case, stands on its own.
You do have to look at conformity in sentencing and fairness in
sentencing, but you look at each individual.  That's what they
got away from in the guidelines.  So I don't think it's a good
example to use.

            MR. KIBRIA:  Understood, Your Honor.

      Again, we ask that the Court look at the actual behaviors
and the actions of Ms. Bustle.  Again, all she did was walk into
a breached building, walked around, and the evidence against her
just simply suggests, actually shows that she was speaking with
police officers in a very, you know, gentle manner and there was
no violence, as Mr. Romano has stated.  There was no violence,
no incitement of violence on their part, and they did, you know,
simply walk through the Capitol building.

      As for her Facebook posts, I, as an officer of the court --

            THE COURT:  She did put up her "no vaccine" sign, the
parading and protesting.

            MR. KIBRIA:  And that is why we entered into that
plea, because it did actually align with the actions she did
take.  And yes, Your Honor, you are correct, she did have a sign
that said "no vaccines."  However, that sign did not indicate as
to any rioting or inciting violence or things like that.

      So therefore, I will turn to her Facebook posts.  As an
officer of this court, I have had conversations with Ms. Bustle
regarding her Facebook posts and her, you know, activity on

1    social media.

2        First of all, let me say that from our conversations and my

3    suggestions as to, you know, the harms of social media and the

4    kinds of cult-like, you know, personalities that have been

5    formulated through social media in these last five to ten years

6    in our country, I believe Ms. Bustle was generally, from her

7    words, somewhat a victim to that when, you know, very, very

8    large, important, and prominent figures -- I won't name who, but

9    I think you know who exactly I'm talking to -- are constantly

10   for four years shouting down orders basically through social

11   media and through media.  Many people fell victim to this.

12       And I will tell that you Ms. Bustle took my advice and has

13   been off of social media since the charges came through.  Her

14   and Mr. Bustle have not been on social media, and they've told

15   me that they actually found a new life and thanked me for, you

16   know, giving them that advice that social media is very harmful

17   and actually can lead people to believe things and do things

18   that they may not actually be, you know -- believe in them

19   themselves.  I think Ms. Bustle was actually a victim.

20       Again, I don't discount the fact that she is an adult and

21   makes, you know, actions on her own and thoughts on her own.

22   But I believe when you look back at the four years and

23   especially the months leading up to the Capitol riot, that

24   certain figures, very prominent, very large figures, and again,

25   I think you know who, were directing orders to people, when, you

know, they have no other thoughts besides they believe in a
certain ideology and the key leaders in those ideology are
telling them to do certain things, people will partake in that.

    And again, Mrs. Bustle is very remorseful for that.  She
has been off social media and has changed her life completely.
And that is coming from me, again, from deep conversations with
her.  This is the truth.  I would not put forth lies in front of
this Court as an officer of the court.  So I think she
understands how she was affected and how her actions may have
put her in this place.

    However, we do need to look back, in terms of the
sentencing, as to the physical actions she did take a part in
that day.  They were to cause no violence, to insight no
violence.  She simply walked through an already breached Capitol
and was only there for 20 minutes.

    And I guess if we take into account your words, Your Honor,
that we don't want to look at Anna Morgan-Lloyd's case because
that's a different case, fine, but we do put emphasis on the
words of Mr. Romano as a representative of the government that
he suggests that based on the behaviors and actions, that
probation be the term.

    We also do ask, though, that Ms. Bustle not to be fined.
As Mr. Anderson stated, Mr. Bustle, who is the key provider for
this family in terms of income, has no income anymore.  And
Ms. Bustle was a housewife, and she has been raising their

1   children, their one child with another one on the way.

2       Therefore, we believe a probationary term is appropriate.

3   The only thing we would ask for is that there be no fine

4   instituted.  We also believe restitution and community service

5   is also fine and appropriate.

6       THE COURT:  Thank you.

7   I would like to have Mr. Bustle address the Court if he

8   wishes.  You have the right to do so.  And then I will hear from

9   Mrs. Bustle.

10      DEFENDANT JOSHUA BUSTLE:  Thank you, Your Honor.

11  I think my defendant has spoke well for me.  I don't really

12  have much else to say.  I do recognize that I did break the law,

13  and I just hope that you look at what I do there.

14      And that would be it.  Thank you, Your Honor.

15      THE COURT:  Let me ask you, your attorney made the

16  point that you've lost your job, which was in real estate at

17  that time, and I understand -- I think it was mentioned on an

18  earlier status call that you subsequently have a new real estate

19  job?

20      DEFENDANT JOSHUA BUSTLE:  I am still in real estate,

21  but I have not been able to continue to perform anymore.

22      THE COURT:  And the concerns about moving, you said

23  you're going to move to somewhere down south?

24      DEFENDANT JOSHUA BUSTLE:  Yes.  I just need to have a

25  fresh start.

1          THE COURT:  And that is because of the notoriety of

2     this case?

3          DEFENDANT JOSHUA BUSTLE:  Yes, Your Honor.

4          THE COURT:  Now, what's the situation with your family

5     and your relationship with them because of this case?

6          DEFENDANT JOSHUA BUSTLE:  It's not great.

7          THE COURT:  You have family in this area?

8          DEFENDANT JOSHUA BUSTLE:  Yes, Your Honor.

9          THE COURT:  All right.  Thank you.

10        Mrs. Bustle, let me talk with you for a few minutes about

11    your situation and what you want me to consider as I determine

12    whether probation is appropriate or jail time is appropriate.

13         DEFENDANT JESSICA BUSTLE:  Thank you for letting me

14    speak, Your Honor.

15        I don't have much to say other than that I'm sorry for my

16    actions and that I love our country, and that's all.

17         THE COURT:  Obviously, you did attempt to minimize

18    your involvement or justify the conduct overall, what happened

19    on January 6 in your postings.  Your counsel indicated that you

20    got away from that, you aren't doing that.  But you did write on

21    Facebook before the riot, "We don't win this on the sidelines.

22    Excited to stand for truth with my fellow patriots and freedom

23    fighters in D.C. today."  And then after the riot, you wrote,

24    "The vice president of the United States is a traitor" and that

25    you stormed the Capitol.

1      Then you said that the information the media were

2  portraying was false and saying that you walked right in with

3  tons of other people and that some supporters were supposedly

4  unruly and that Congress reassembled in the same place that was

5  supposedly destroyed and people were simply making their

6  presence known, finally growing a backbone, that the election

7  has been undermined and stolen, that people are tired of being

8  lied to and cheated and we need a revolution, that we can accept

9  an honest and fair election but that this is not fair and

10  patriots don't want to see their country brought into Communism,

11  that I'm proud of them standing up.

12      What am I to take of that, that you did not actively

13  support, essentially encourage this riot that occurred?

14          MR. ROMANO:  Your Honor, I think we might have lost

15  Ms. Bustle.  I don't see her on the participant line anymore.

16          DEFENDANT JOSHUA BUSTLE:  Can you give me one second,

17  Your Honor?  I think her computer is freezing up.

18          THE COURT:  All right.

19          MR. ANDERSON:  Mr. Bustle, just put her in front of

20  your screen.  Okay?  Just go get her.

21      (Pause.)

22          THE COURT:  Mrs. Bustle, I don't know if you heard my

23  final statements.

24          DEFENDANT JESSICA BUSTLE:  No, I heard it, Your Honor,

25  right before the screen frozen and I was kicked out of Zoom.

1           THE COURT:  All right.  Thank you.  Would you try to

2    answer my question about your participation in the riot with

3    that language beforehand and after it supporting it?

4           DEFENDANT JESSICA BUSTLE:  Yes, Your Honor.

5       So we went down to D.C. for the medical freedom rally that

6    took place a couple of blocks over.  My son, my son that's

7    living has been injured by vaccines.  So my sign said "no

8    mandatory medical procedures," that I don't believe that every

9    medical procedure should be mandatory.  And we walked over to

10   the Capitol from the medical freedom rally.

11      And I understand that my terminology with saying "storm the

12   Capitol," I didn't understand what that meant at the time.  I

13   didn't have any knowledge of what was going on in the front of

14   the building.  I only saw what was taking place on my side of

15   the building, which wasn't anything like what was going on on

16   the other side of the building, at least when we got there.

17      So that doesn't justify my actions in any way.  Those

18   Facebook posts were made before I had any clue what was actually

19   going on, which actually didn't happen until the following day,

20   and that the things that I saw were different than some of the

21   things that happened in the front, because I didn't see that

22   stuff going on.

23           THE COURT:  All right.  Your views are the same today,

24   are they, the language that we need a revolution, that this is

25   not fair and patriots don't want to see their country brought to

Communism and destroyed over on a lie and you're proud of them

for standing up?

DEFENDANT JESSICA BUSTLE:  I can't hear anything.

MR. KIBRIA:  Your Honor, I believe she might be having

trouble hearing Your Honor's latest question.

DEFENDANT JESSICA BUSTLE:  I didn't hear your

question, Your Honor.  I'm sorry.

THE COURT:  Let me try that again.  I said you

indicated in your views -- this is, I believe, the day after the

riot.  You indicated -- it says you went into the building.  So

this is after the riot.  You said this election is undermined

and stolen, people are tired of being lied to and cheated, we

need a revolution, you can accept a fair and honest election but

this is not fair and patriots don't want to see their country

brought into Communism based on a lie and I'm proud of them for

standing up.

And that's what you still believe today?

DEFENDANT JESSICA BUSTLE:  With respect to the things

that I've seen that have taken place, no, Your Honor, I don't

agree with that.  The violence and stuff like that, I wasn't

aware of that stuff because I didn't see any of those things

going on.

So I condone and do not agree with anybody who is ever

violent towards anybody in life, no matter who that is.

THE COURT:  Now, your counsel has represented you're

1   presently expecting.  Is that accurate?

2           DEFENDANT JESSICA BUSTLE:  Yes, Your Honor.

3           THE COURT:  All right.  And you have a child who is

4   four years of age, a boy?

5           DEFENDANT JESSICA BUSTLE:  He just celebrated his

6   fifth birthday last week.

7           THE COURT:  And you used to be employed in the dental

8   area, managing dental clinics, et cetera, had a very successful

9   job, but you left that after your son was born?

10          DEFENDANT JESSICA BUSTLE:  Yes, Your Honor.  I left

11  that to stay home with my son and take care of him.

12          THE COURT:  All right.  Either counsel have anything

13  else to add to this matter?

14          MR. ROMANO:  Nothing else from me, Your Honor.

15          MR. ANDERSON:  Nothing else from me, Your Honor.

16          MR. KIBRIA:  Nothing further from me as well, Your

17  Honor.

18          THE COURT:  Now, I was concerned about this matter,

19  and I'm going to pass sentencing at this time, because of the

20  nature of the offense.  This case, I think, is somewhat unique,

21  because although I have grave concerns about Mr. and Mrs. Bustle

22  going into the Capitol during the riot, even though apparently

23  it was on the east side and the main riot was on the west side,

24  but still, they went through a door that had been -- windows had

25  been broken and the police were all there and, obviously, the

sound and the noises of the riot going on were all evident, and then Mrs. Bustle's posting before and thereafter are of great concern.

I'm saying it's unique because they were not there originally as Trump supporters, although they may be Trump supporters.  But they were there on a medical protest, antivaccine protest at a different place than the Trump rally and came on after the main riot had begun and access into the Capitol had been forced by the rioters.

The unfortunate side is that, obviously, there's a riot, and it was a riot, and people were engaged in the riot.  In fact, not only did violence occur, but people died.  The day before yesterday, another Capitol police officer committed suicide, making it the fourth one since the riot, after what they went through for several hours.  If you listened to the testimony of the officers on the Hill the other day, you can understand how tragic it was.

I think the people who engaged in this process should be punished and have to be responsible, and that may be jail time for most people.  In this case, I'm not going to give jail time, and I'll explain my rationale and reasons.

First, I said this is unique.  These people were not here originally to protest with President Trump and did not listen to the exhortations to march the Capitol.  They were not engaged in that process going on of the speeches and went in after the

1    riot had begun.

2       They're not tourists.  I object to any individual who is

3    trying to characterize this or the narrative that somehow these

4    people were tourists while attacking our system and the

5    democracy in this country.  There was, obviously, an intent to

6    interfere with the electoral process and essentially cause a

7    revolution.

8       But at the same time, Mr. Bustle has no prior criminal

9    records of any matter.  He has worked his entire life in the

10    realty business, supported himself early on as a young man on

11    his own.  He was qualified as a field mechanic and then went

12    into real estate and became successful in the real estate

13    business, which he has lost as a result of this arrest and

14    charge and guilty plea in this case.

15       His counsel indicated that he has been substantially

16    punished already.  Both Mr. and Mrs. Bustle are being punished

17    by feeling they have to leave the area because of the notoriety

18    associated with having been charged in this case.

19       Mr. Bustle has been separated from his family, his parents

20    and other family members who are from the same area.  He hasn't

21    seen them with their grandson.  All of this is punishment.  They

22    will again be separated when the new grandchild is born, which

23    is substantial punishment.  They have to relocate to a new

24    community and establish a new home.

25       Mr. Bustle had been somewhat successful financially and

worked all his life since a young teenager and has indicated
that he was able to provide successfully.  Mrs. Bustle had
successful employment until the time she had a child and stayed
home to care for her family.

But as to the nature of the sentence and the factors the
Court has to consider under the sentencing guidelines -- not the
guidelines but the sentencing statute.  The guidelines do not
apply to this offense because it's a misdemeanor offense.
Misdemeanor means it's a minor offense.  It does not mean it's a
felony offense.  This is a class B misdemeanor.  The maximum
sentence is up to six months in jail and a fine of $5,000.

I have to look at the sentencing factors in considering the
appropriate sentence under Title 18 United States Code 3553(a):
The nature and circumstances of the offense and the history and
characteristics of the defendants; the need for the sentence to
reflect the seriousness of the offense and promote respect for
the law and the need for the sentence to afford adequate
deterrence; the need to avoid unwarranted sentencing disparities
between other defendants with similar records who are found
guilty of similar conduct.

Obviously, the nature and circumstances of the offense,
their particular offense has to be put in context.  Their
particular offense can be downplayed to say they were simply,
quote, tourists, unquote, walking into the Capitol.  In context,
what we had was -- and they had some understanding of this when

they went in because of the surrounding circumstances.  You
can't be blind to it.

The nature of the attack was unique in the history of our
country.  I think the last time the Capitol had been under
attack and occupied over strong opposition by the lawful
authorities was maybe the War of 1812 when the Capitol was taken
over by the British and burned.

And now we have a group of individuals irritated and misled
by false claims of a fraudulent election who decided to take the
law into their own hands.  And the basic premise in this country
is the rule of law where every person agrees as a part of the
membership of this country as citizens to obey the law.  It is
concerning to the Court and, I'm sure, to all people in this
country that this can happen in our nation.

The government has suggested maybe a spectrum or a matrix
of how to consider these cases, and I take that suggestion
seriously in determining what's a fair and just sentence on the
spectrum.  The government advises that we should look at whether
and how the defendant entered the Capitol building, whether the
defendant engaged in violence or incited violence, whether the
defendant engaged in any acts of destruction, whether the
defendant's reaction to the acts of violence and destruction,
how they reacted to it, whether during or after the riot the
defendant destroyed evidence, the length of time the defendant
was in the building, exactly where the defendant traveled within

1    that building, obviously what the defendant did in the building,

2    defendant's statements and posts on social media, and whether

3    the defendant cooperated with law enforcement, whether the

4    defendant otherwise exhibited --

5              MR. ROMANO:  I think the Judge's feed has frozen.

6              THE COURT:  Really, you have to understand that

7    there's no evidence, the government says, that Mr. Bustle

8    engaged in any violence or destruction of property.  He did not

9    destroy evidence after the riot or write anything with respect

10   to the riot on social media.  He got into the building

11   approximately 30 minutes after the other rioters had breached

12   the door.  At the time he entered, the doors were open.  There

13   were police officers at either side of the door, and a group of

14   rioters were crowding the opening, and there were signs of

15   damage in the area.  Obviously, he had to see that.  The windows

16   are smashed where he walked in.  The alarms were sounding

17   throughout the Capitol rotunda, and the -- but his actions were

18   to walk into the building.  He took some pictures of his wife

19   holding onto the "no vaccine" sign, and a few of the other items

20   listed in the spectrum the government has suggested.

21        His criminal history is none really.  He doesn't come under

22   the guidelines but looking at it.  He agreed to plead guilty

23   early on.  He acknowledged his conduct.  He wanted to promptly

24   resolve the case, and that is significant to the Court.

25             Because of the nature of this riot and the damage done and

people who lost lives, obviously, overall the offense supports
incarceration, but in this case Mr. Bustle is separate from
that.  Obviously, deterrence, people are going to have to
realize this illegal type of activity, attacking the established
government of the United States, it has to be deterred in the
future.

Mr. Bustle has suffered consequences already, personal and
professional consequences, and that seems to discourage any
further activity of this sort.

Judge Moss, as the government indicated, made the following
statement:  "Democracy requires the cooperation of the governed.
When a mob is prepared to attack the Capitol to prevent our
elected officials from both parties from performing their
constitutional and statutory duty, democracy is in trouble.  The
damage that that defendant and others caused that day goes way
beyond the several-hour delay in the certification.  It is a
damage that will persist in this country for decades."

And I agree.  The United States has been held up to the
world.  The country has always believed in democracy and pursued
it until now we see what happened January 6th.

It seems to the Court that Mr. Bustle, in the very limited
capacity, engaged only because he walked into the premises, I
think with some understanding of what was happening.

I'm worried about having unwarranted disparities in
sentencing.  As I said, I think individual -- we have to treat

1    each case individually, and we do hope there will be some

2    uniformity of sentencing in these matters.  In this case, as I

3    mentioned, the probationary sentence should not become the

4    default to everyone who is charged with a misdemeanor.

5        I certainly considered giving jail time to Mrs. Bustle

6    because of her publications, but that seems to me that this is

7    not a type of sentence that would be productive in this case.

8    They have already suffered and have to move from the area.

9        So I am going to sentence Mr. Bustle for all of those

10   reasons and similar reasons for Mrs. Bustle.

11       I think the punishment because of the recommended

12   probationary time of home confinement time, community service

13   time, the restitution that will be due and paid would be an

14   appropriate sentence in light of the consequences of his

15   activities.

16       So the sentence will be as follows for Joshua Bustle:

17   Consistent with the Sentencing Reform Act of 1984 and in

18   consideration of provisions in 18 U.S.C. 3553, which I've

19   discussed with you, it is the judgment of the Court that Joshua

20   Bustle is sentenced to a term of 24 months (two years) of

21   probation on Count 4, which will include 30 days of home

22   confinement, and will be sentenced as well to 40 hours of

23   community service.

24       In addition, you are ordered to pay a special assessment of

25   $10 under Title 18 Section 3013.  And while -- you are to abide

by the following mandatory conditions on the probation and
supervision, as well as the standard conditions.  Mandatory
conditions include, obviously, not committing any other crimes,
not unlawful possessing controlled substances.  I will not
require mandatory drug testing, and that will be suspended
because I see you as a low risk for any substance abuse.

You will make your restitution in Title 18 Section 3653,
and you will make payments to the Department of Treasury in the
amount of $500.  I am not going to assess a fine against you
because of your necessity to leave the community and join a new
community and because of the upcoming child and you lost your
employment.  You have other assets that you can live on.  You're
very fortunate that you worked hard, but I do not think a fine
is appropriate in your present condition.

Restitution can be made to the Clerk of Court of the United
States District Court for the District of Columbia in the amount
of $500, and the victim is the United States Department of
Treasury.  The balance of the restitution will be paid no less
than $200 a month until paid in full.  You have to provide the
Probation Office access to financial information and release of
any financial information to pay off this restitution.

Now, the home confinement will be monitored by the
appropriate probation office in the district in which you join.
Whether it's somewhere down south or you stay in Virginia, that
will determine your home confinement, and they will establish

1    the appropriate location monitoring as necessary.

2         Home confinement means you're confined to your house except

3    you may report to work, medical appointments, church services,

4    and the like, and seek permission from the Probation Office for

5    other special needs you may have if you have to leave the house.

6    But otherwise, you're confined to your home.

7         MR. ANDERSON:  Your Honor, Tim Anderson for

8    Mr. Bustle.  Can I ask for one clarification on the home

9    confinement?

10        THE COURT:  All right.

11        MR. ANDERSON:  Your Honor, Mr. Bustle and his wife are

12   moving to South Carolina.  The movers are coming on August 14th.

13   So we would ask the Court to allow him to have a delayed report

14   for home confinement to possibly August 27th to September 1st,

15   just so that they can get moved in and then begin that home

16   confinement period in South Carolina.

17        THE COURT:  I'm going to grant that.  I think he

18   should talk to Ms. Field, the probation officer, the Pretrial

19   Services officer here to make arrangements.  You will have to

20   make arrangements for the Probation Office wherever they move in

21   South Carolina.  They'll have to handle the home confinement as

22   well.

23        MR. ANDERSON:  Thank you, Your Honor.

24        THE COURT:  I need to legally advise you that you have

25   the right to appeal the sentence under Title 18 Section 3742 if

1   I gave you an improper or illegal sentence that departs

2   upward -- there's no guideline range, but if it's longer than

3   the statutory maximum, which it's not, and your right to

4   challenge this conviction under Title 28 U.S.C. 2255 if you find

5   new information that's been unavailable at this time or shows

6   you should not have been guilty of this offense or that you

7   received ineffective assistance of counsel.

8        All right.  Now as to Mrs. Bustle.  Mrs. Bustle, again for

9   the rationale I've already put in the record, I believe you

10  should be entitled to probation despite your publications on

11  social media.  I think the loss of your husband's position, the

12  need to move from the area, the lost family as you have a new

13  child coming has been substantial punishment as indicated by the

14  Court.

15       Additionally, I believe that you have true remorse for what

16  you did and a better understanding of what happened at this

17  point than you did on January 6.

18       At the same time, I seriously considered putting you in

19  jail because those statements concern the Court.  The statements

20  about patriots are so inaccurate and so misguided that, as your

21  lawyer indicated, you have been swayed by social media and by

22  others, but patriots are not one to attack ongoing operations of

23  Congress and the legitimate operation of their constitutional

24  duties and attempt to stop them.  That is a revolution, not

25  patriotism.

1    But under the Sentencing Reform Act of 1984 and in

2    consideration of the Title 18 Section 3553 factors as I've

3    reviewed for you and your husband, it is the judgment of the

4    Court that Jessica Bustle will be committed for a term of 24

5    months (two years) of probation as to Count 4.  In addition,

6    there is a special assessment of $10 for the conviction of this

7    misdemeanor.

8    An additional part of the sentence is I'm going to give you

9    a sentence of home confinement for 60 days because of your

10   activities being more serious than your husband's.  Again,

11   probation can set the terms of that confinement.  You would be

12   confined to your home, but if you need to leave, with the

13   probation officer's permission, you can do so, but generally,

14   you will be confined to your home for 60 days and subject to

15   location monitoring.

16   Now, while you're on supervised probation, you have to

17   follow all the mandatory conditions and the standard conditions

18   of your supervision.  Mandatory, obviously, no more crime of any

19   kind, no unlawful possession of a controlled substance.  I will

20   not require mandatory drug testing because I don't think there's

21   evidence of any future substance abuse.  You have to make

22   restitution under the law as ordered to the Department of

23   Treasury for $500.  I'm going to waive any fine, because I do

24   not believe you're in a position to pay any fines.  Now, the

25   obligation for the restitution is paid at no less than $200 a

1    month until paid.

2        Additionally, I think that you have to understand that

3    during your term of release as well, an additional provision of

4    the sentence will be community service, and I will give you the

5    same length of time that I gave your husband for community

6    service, which I hope you will do something in the new community

7    you move to for people who are less fortunate than you.  I think

8    it would be appropriate for you in your situation and not

9    working with your son turning five and certainly going to

10   preschool.

11       I'm not going to lecture you on your vaccine choices or

12   not.  That's your decision.  I hope that you read appropriate

13   media and accurate media about your decision, particularly in

14   light of the delta variant and the danger it provides to you, to

15   your unborn, and to your son if you're not vaccinated.

16       That will be the sentence of the Court.  You have the

17   right, again, to appeal, as I indicated to your husband, if I

18   gave you a sentence longer than required by the law.  You have

19   the right to challenge your conviction or sentence if new and

20   currently unavailable information should come to light or if you

21   receive -- you claim you received ineffective assistance of

22   counsel, your counsel didn't do a good job for you.

23       That will be the sentence in the case.  I'm going to check

24   with the presentence report provider.  Ms. Field?

25            PROBATION OFFICER:  Your Honor, thank you.

1      If I may just clarify, what is the date that they are to

2    report to the home detention?  Was it August 27th or

3    September 1st?

4          THE COURT:  Let me ask their counsel.  He's the one

5    that suggested those dates.  What is realistic for them to do

6    it?  They've got to get moved, get there, and they're going to

7    have to stay home.  So they can't go out and do things they

8    might want to do for a while.

9          MR. ANDERSON:  Your Honor, I had a conversation with

10   my client, Mr. Bustle, this morning on that point.  And the

11   movers are moving them, picking up furniture on August 14th.

12   They're traveling to South Carolina.  They're going to get set

13   up.  And he asked for a couple of weeks.

14         So under the circumstances, I would ask September 1st be

15   the start date.  That should give them enough time to be set up

16   and start it at that time.

17         THE COURT:  All right.  I will put it in the order,

18   then, for the Probation Office to begin his term, both of them

19   begin their terms of home confinement on September 1st for the

20   lengths I've indicated, and they will have to do that.  Failure

21   to do that would be a violation of the terms of probation, and

22   you could come back to the Court subject to imprisonment.

23   Failure to abide by any terms of your probationary requirements

24   will result in your probation being revoked and going to jail up

25   to the maximum, which is two years.

1          All right.  Anything else?

2               PROBATION OFFICER:  No, Your Honor.  Thank you.

3               THE COURT:  All right.  Thank you, Mr. Romano.  I

4     appreciate your work on this case.

5               MR. ROMANO:  Thank you, Your Honor.

6          (Proceedings adjourned at 1:19 p.m.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                CERTIFICATE OF OFFICIAL COURT REPORTER

 2

 3            I, Sara A. Wick, certify that the foregoing is a

 4    correct transcript from the record of proceedings in the

 5    above-entitled matter.

 6

 7            Please Note:  This hearing occurred during the

 8    COVID-19 pandemic and is, therefore, subject to the

 9    technological limitations of court reporting remotely.

10

11

12    /s/ Sara A. Wick                 August 11, 2021

13    SIGNATURE OF COURT REPORTER      DATE

14

15

16

17

18

19

20

21

22

23

24

25
```